**Mrs. Mildred ROBERTS, Appellant,**

**v.**

**KAUFMAN STRAUS COMPANY, Appellee.**

Court of Appeals of Kentucky.

Dec. 17, 1954.

Irving I. Friedman and Anton B. Dreidel, Louisville, for appellant.

Edwin O. Davis, Louisville, for appellee.

STEWART, Chief Justice.

This appeal is from a judgment of the Jefferson Circuit Court entered upon a verdict directed in favor of appellee, Kaufman Straus Company, upon a motion made at the close of appellant's evidence. Appellant sought damages in the sum of $5,-278.75 in circuit court.

The evidence shows that on July 14, 1952, Mary G. Pruitt, accompanied by her mother, Mildred Roberts, a fifty-four-year-old housekeeper, appellant herein, went to the third floor of appellee's store in Louisville for the purpose of making certain purchases. The accident giving rise to this litigation occurred while they were descending by elevator to the first floor.

Appellant testified she and her daughter boarded the elevator on the third floor, preceded by another passenger whom they later learned to be Edna Craddock. According to appellant, "quite a few" people already were on the elevator, although she gave no estimate of the number, and she and her daughter took a position in the front close to the operator. The elevator stopped at the second floor to take on another passenger who was never identified as to name and who was described in the record as "a fat woman" and "a heavy-set person." After entering, this latter person shoved or carelessly jostled appellant, thereby forcing her forward at the same instant the operator started to close the door, with the result that the door hit her head above the left eye, knocking her spectacles off and breaking the lens. Appellant's daughter gave substantially the same version of the accident. The injury consisted of a bruise on the left frontal region of her head and appellant said she was thereby incapacitated several weeks and caused to suffer severe headaches.

Appellant argues that the elevator is governed by the same rules of law that regulate a common carrier, so that the elevator operator in a case such as the one under consideration had a duty to exercise the highest degree of care toward a passenger; that the operator had a duty to prevent the elevator from being overcrowded; and that the operator had an obligation to see that the passenger was in a safe position before closing the door.

Appellee does not attempt to deny that appellant was injured on the elevator but it does deny that any action on its part, or that of any of its employees, was the proximate cause of her injury.

We believe appellee's contention of nonliability is amply sustained by the evidence. The following excerpts taken from the testimony of appellant are in point:

"135. * * * Which happened first, did the door come to first, or did the fat lady push you first? A. Well, now, that, I don't know, but I do know when she pushed me that is when the girl closed the door on me.

"Q. In other words, it happened at the same time, as far as you know? A. It happened at the same time, as far as I know.

"Q. Now, is that the way it happened? A. Just like I told you all, that is the way it happened.

"136. * * * Your whole claim is that the fat lady pushed you and the door came to at the same time and the door hit you on the head? A. That is right; that is what hit me in the head, was the door, and she shoved."

Edna Craddock, who was farther back in the elevator, stated she did not see the mishap from where she was standing. Mary G. Pruitt, the daughter of appellant and the only other witness beside appellant who testified as to how the accident occurred, testified that the shoving of appellant and the closing of the elevator door "all happened at one time."

The evidence is all one way to the effect that appellant sustained her injury solely through the act of an individual unconnected with appellee and under circumstances that showed no negligence upon the part of appellee. She was carelessly pushed or shoved by a rude "fat woman" while the elevator door was being shut and the elevator operator had no forewarning or opportunity at the time to prevent appellant from coming in contact with the door. Appellee is not to be held liable in this instance for a wrong done through the act of a stranger which could not be reasonably anticipated by its servant.

There is proof that the elevator was "crowded" but the term was not clarified by any evidence. None of the witnesses testified she did not have sufficient room to stand in it, although she indicates there was not ample space to move about in it well. Appellant and her daughter were the last two people to get on the elevator before the "fat woman" entered it, and evidently they did not consider the elevator to have been uncomfortably or unsafely loaded when they boarded it. Appellant's statement that "quite a few" persons were on the elevator is not affirmative proof that it was overcrowded. From such a line of testimony we cannot infer a condition to have been created or permitted by the operator that imperiled the safety of the passengers on the elevator on the occasion of appellant's injury.

We believe the evidence sustains appellee's theory that the accident was the direct result of an individual act of rudeness or recklessness on the part of a fellow passenger, namely, the misconduct of the "fat woman" in pushing appellant against the door and was not caused, as appellant argues, by the general jostling and shoving of a mass of people on an overcrowded elevator. This conclusion obviates the necessity of answering the other questions raised by appellant. The directed verdict of the lower court was therefore proper.

Wherefore, the judgment is affirmed.